1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| STEPHANIE RENEE SEPULVEDA, | ) Case No.: 1:15-cv-01205-BAM |
| Plaintiff, | ) |
| | ) **ORDER REGARDING PLAINTIFF'S** |
| v. | ) **SOCIAL SECURITY COMPLAINT** |
| | ) |
| NANCY A. BERRYHILL,[1] Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

12

13

14

15

16

17

18

## INTRODUCTION

19

20

21

22

23

24

25

Plaintiff Stephanie Sepulveda ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]  Having carefully considered the parties' briefs as well as the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial

26

27

28

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this action.

[2]     The parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings in this case, including entry of final judgment.  (Docs. 6, 8).

1  evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court

2  affirms the agency's determination to deny benefits.

3  ## FACTS AND PRIOR PROCEEDINGS

4  Plaintiff filed her applications for disability insurance benefits and supplemental security

5  income on September 2, 2011.  AR 160-69, 170-73.[3]  Plaintiff alleged that she became disabled on

6  August 15, 2011.  AR 160, 170.  Plaintiff's applications were denied initially and on reconsideration.

7  AR 100-104, 111-15.  Subsequently, Plaintiff requested a hearing before an Administrative Law Judge

8  ("ALJ").  ALJ John Cusker held a hearing on September 20, 2013, and issued an order denying

9  benefits on December 20, 2013.  AR 14-26, 31-58.  Plaintiff sought review of the ALJ's decision,

10  which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR

11  1-3, 11-13.  This appeal followed.

12  **Hearing Testimony**

13  The ALJ held a hearing on September 20, 2013, in Fresno, California.  AR 31-58.  Plaintiff

14  appeared and testified.  She was represented by attorney Melissa Proudian.  AR 33.  Impartial

15  Vocational Expert ("VE") Judith Najarian also appeared and testified.  AR 33, 51-57.

16  At the time of the hearing, Plaintiff was 35 years old, 5'8" tall, and weighed 217 pounds.  AR

17  34-35. In response to questions from the ALJ, Plaintiff testified that she has a GED, and has not

18  worked since August 15, 2011.  She last worked for the Internal Revenue Service in the mail room,

19  sorting and bundling mail, stamping forms and carrying files.  In the last fifteen years, Plaintiff has

20  done a variety of jobs, including work in hospitals and convalescent hospitals, construction, grocery

21  stores, warehouses and group homes.  AR 36-37.

22  When asked about her limitations, Plaintiff testified that she has chronic pain in her neck,

23  shoulders, legs, arms and back, side effects from her medication, an inability to concentrate or focus

24  and depression.  Her primary care doctor, Pushpa Gursahani, advised her not to work.  AR 37.

25  When asked about medications, Plaintiff testified that she takes Amlodipine for high blood

26  pressure, Loratadine for allergies, Sertraline and Zolpidem for mental health, Norco, Hydrocodone,

27

28  _____

[3]    References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    Morphine, and is on Gabapentin.   Several different doctors are prescribing her these medications,

2    including a pain management doctor.    AR 38-39.  When asked about side effects, Plaintiff testified

3    that her pain medications make her sleepy, tired, and "out of it."  AR 39.  In addition to medications,

4    she sees a life coach and a physical therapist.  She also has had injections and surgery for her neck.

5    AR 40-41.

6        Plaintiff testified that she lives with her two kids, aged 20 and 14.  She is able to dress and

7    bathe herself without assistance.  She does not cook, do laundry or do housework, but will assist her

8    kids with grocery shopping.  She does not have any hobbies, does not attend religious services and

9    does not belong to any social organizations.  AR 42-43.  When asked how she spends her time,

10   Plaintiff testified that she spends 20 to 22 hours a day lying in her bed, sleeping, staring at the ceiling

11   or wall, or watching television.  AR 43.

12       When asked about discrepancies between her testimony and the opinion of her pain

13   management doctor, Plaintiff testified that she does not see the doctor, but instead sees the physician's

14   assistant.  When Plaintiff reported sleeping a lot, she was referred to a life coach.  She also reported

15   that some of the medications were not working, despite the doctor's statement that her pain had been

16   relieved by about 50 percent.  Plaintiff disputed the doctor's report that her medical branch blocks

17   provide 80 percent relief for about two hours.  Although Plaintiff reportedly does not see that doctor,

18   he recently put her on a new pain medicine.  AR 43-45.

19       When asked about her abdominal impairments, Plaintiff testified that her symptoms have not

20   resolved and she has acid reflux and polyps.  Plaintiff confirmed that she has benign adenoma.  AR 45.

21       Following questioning by the ALJ, Plaintiff responded to questions from her attorney.  Plaintiff

22   testified that the pain in her neck is constant and moves to the back of her head and then down her

23   shoulders, arms, legs and back.  She can sit in a chair for about 15 to 30 minutes, stand about 15

24   minutes, and walk about half a block.  The heaviest amount of weight she can lift is ten pounds.  When

25   she lies down, she has to elevate her legs and head.  She never has a day where she is free from pain.

26   AR 45-47.

27       When asked about attention and concentration, Plaintiff testified that the longest she could

28   watch television and follow the plot was 30 minutes.  She can hold her head in one position to look at

3

1    the monitor for about 30 or 40 minutes before her neck starts hurting and she needs to lie down for

2    about two hours.  AR 47-48.

3         When asked about movement of her neck, Plaintiff testified that she cannot move her head side

4    to side or front to back because she has a prosthetic disc in her neck, with plates and screws.  She can

5    reach overhead with either arm, with pain.  She cannot bend over and get something off the ground.

6    She also cannot kneel, squat, or climb a ladder.  However, she can climb stairs and walk on uneven

7    surfaces.   AR 48-49.

8         When asked how her depression affected her ability to function, Plaintiff testified that she

9    cannot focus or concentrate.  She does not want to get out of bed or take a shower.  She wants to be

10   left alone and secludes herself.  She is withdrawn and gets irritable.  Her medication sometimes helps

11   with these things.  AR 50.

12        Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE")

13   Judith Najarian.  The VE testified that Plaintiff's past work was classified as nurse assistant, mail

14   sorter, construction worker II, laborer stores, clerk general, deli cutter-slicer and home attendant.  AR

15   52-54.  The ALJ then asked the VE hypothetical questions.  In the first hypothetical, the ALJ asked the

16   VE to consider a hypothetical individual with the same age, education and previous work experience

17   as Plaintiff, with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, stand

18   and/or walk with normal breaks for about six hours in an eight-hour work day, and sit with normal

19   breaks for about six hours in an eight-hour work day, with unlimited pushing and pulling except to the

20   extent indicated for lifting and carrying.  This individual also could frequently climb ramps and stairs,

21   occasionally climb ladders, ropes and scaffolds, frequently balance, stoop, kneel, crouch and

22   occasionally crawl.  This individual did not have any manipulative, visual, communicative or

23   environmental limitations, but was limited to understanding and remembering simple one to two step

24   tasks and carrying out simple one to two step tasks throughout a 40 hour work week with customary

25   breaks.  This individual also could interact appropriately with peers, supervisors and the public and

26   had adequate capacity for adaptation.  The VE testified that this individual could not do any of

27   Plaintiff's past work as performed, but could work as a mail clerk and deli cutter-slicer as described in

28   the DOT as light work.  AR 54-56.

1    For the second hypothetical, the ALJ asked the VE to consider an individual with the same

2  physical limitations, but who was unable to maintain attention and concentration to carry out simple

3  job instructions.  The VE testified that there would be no jobs for this individual.  AR 56.

4    For the third hypothetical, Plaintiff's counsel asked the VE to consider the same elements in

5  the first hypothetical, but this individual could only hold his/her head in one position for

6  approximately 15 minutes and then would have to take a break of anywhere from one to two hours.

7  The VE testified that there would be no work for this individual.  AR 56-57.

8    **Medical Record**

9    The entire medical record was reviewed by the Court.  AR 245-772.  The relevant medical

10 evidence is referenced below as necessary to this Court's decision.

11   **The ALJ's Decision**

12   Using the Social Security Administration's five-step sequential evaluation process, the ALJ

13 determined that Plaintiff was not disabled.  AR 17-26.  More particularly, the ALJ found that Plaintiff

14 had not engaged in substantial gainful activity since August 15, 2011, her alleged onset date.  AR 25.

15 Further, the ALJ identified degenerative disc disease post failed neck surgery and an affective disorder

16 as severe impairments.  AR 19-20.  Nonetheless, the ALJ determined that the severity of Plaintiff's

17 impairments did not meet or medically equal the severity of any of the listed impairments.  AR 20-21.

18   Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual

19 functional capacity ("RFC") to perform light work.  Plaintiff could lift and/or carry twenty pounds

20 occasionally, ten pounds frequently, could sit, stand and/or walk six hours each with normal breaks in

21 the course of an eight-hour workday.  She could frequently climb ramps and stairs, balance, stoop,

22 kneel and crouch.  She also could occasionally climb ladders, ropes or scaffolds, and crawl.  She was

23 limited to understanding, remembering, and carrying out simple 1-2 step tasks throughout a regular 40

24 hour workweek and 8-hour workday with customary breaks, and she could interact appropriately with

25 the public, coworkers, and peers.  AR 21-25.  The ALJ found that Plaintiff could perform her past

26 relevant work as a mail clerk and deli cutter as generally performed in the national economy.  AR 25-

27 26.  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act from

28 August 15, 2011, through the date of decision.  AR 26.

1

## SCOPE OF REVIEW

2       Congress has provided a limited scope of judicial review of the Commissioner's decision to

3 deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

4 Court must determine whether the decision of the Commissioner is supported by substantial evidence.

5 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

6 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

7 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

8 adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be

9 considered, weighing both the evidence that supports and the evidence that detracts from the

10 Commission's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

11 evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

12 *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

13 determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

14 and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

15 *Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

16

## REVIEW

17       In order to qualify for benefits, a claimant must establish that he or she is unable to engage in

18 substantial gainful activity due to a medically determinable physical or mental impairment which has

19 lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §

20 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

21 severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

22 her age, education, and work experience, engage in any other kind of substantial gainful work which

23 exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

24 burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

25 1990).

26

27

28

# DISCUSSION[4]

## I.      The ALJ Did Not Err in Rejecting the Opinion of the Examining Physician

Plaintiff argues that the ALJ erred by rejecting the opinion of the consultative examiner, Dr. Ekram Michiel, a board certified psychiatrist.  Specifically, Plaintiff contends that the ALJ erroneously set aside Dr. Michiel's opinion as "too restrictive" based on the assessment of a non-examining state agency psychological consultant.  Plaintiff also argues that the ALJ erroneously relied on medical records that predated Dr. Michiel's examination.  Plaintiff therefore concludes that the ALJ lacked substantial evidence to justify the rejection of the examining physician's opinion.  The Commissioner counters that the ALJ properly found Dr. Michiel's opinion was reasonably diminished in weight due to inconsistency with Plaintiff's treatment records and the record as a whole.

### A.  Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where an examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the examining physician's ultimate conclusions. *Id.* If the examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31. The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

---

[4]      The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

1    Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a

2    physician—even a treating physician—if it is conclusory and not supported by clinical findings.

3    *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a

4    medical source's opinion concerning a claimant's limitations on the ultimate issue of disability.

5    *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If the record as a whole does not support the

6    medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359

7    F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion

8    include clinical findings from examinations, conflicting medical opinions, conflicting physician's

9    treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th

10   Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec.*

11   *Admin.*, 169 F.3d 595, 600-601 (9th Cir. 1999).

12       **B. The ALJ Provided Specific and Legitimate Reasons for Discounting Dr. Michiel's**

13           **Opinion**

14   Dr. Michiel conducted a consultative psychiatric evaluation of Plaintiff on August 17, 2012.

15   AR 451-54.   On mental status examination, Plaintiff's mood was depressed and her affect was

16   restricted, sad, but her thought process was goal-directed and her thought content was not delusional.

17   AR 452.  She was oriented to person, place and date.  Dr. Michiel opined that Plaintiff's attention and

18   concentration were impaired.  On testing, Plaintiff was able to do digit span five out five forward and

19   three backwards correctly.  Her immediate recall was impaired, and she was able to recall only one out

20   of three items after five minutes.  However, her recent memory was intact and her remote memory did

21   not show any impairment.  Plaintiff's insight and judgment also were intact and her fund of knowledge

22   was average.  Dr. Michiel diagnosed her with depressive disorder NOS, along with chronic pain, and

23   assigned her a Global Assessment of Functioning of 50.   Based upon the evaluation and his

24   observations, Dr. Michiel believed that Plaintiff was able to relate and interact with coworkers,

25   supervisors and the general public and she had no restrictions on activities of daily living, but was

26   unable to maintain attention and concentration to carry out simple job instructions.  AR 453.

27       The ALJ assigned "no weight" to Dr. Michiel's opinion that Plaintiff could not maintain

28   attention and concentration to carry out simple job instructions.  AR 25.  In so doing, the ALJ gave

specific and legitimate reasons for rejecting this portion of Dr. Michiel's opinion.   As an initial matter, the ALJ found that Dr. Michiel's opinion was unsupported by other relevant evidence which showed no mental impairment.   An ALJ may reject an examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[ ] or by objective medical findings," *Batson*, 359 F.3d at 1195.   Here, the ALJ considered a December 2011 examination by the Community Medical Center Emergency Department noting that Plaintiff had normal mood and affect, her behavior was normal and her judgment and thought content were normal.   AR 23, 24, 396-400. The ALJ also noted that subsequent reports from the same provider in April 2012 did not document any mental status examination findings or treatment other than medications.   AR 24, 577-85; 591-95. Additionally, the ALJ considered Plaintiff's follow-up treatment for depression on January 18, 2012, during which Plaintiff reported improved fatigue and appetite with no side effects from medication. AR 23, 438.   The ALJ also took into account treatment notes from January 24, 2012, which revealed normal speech and the ability to follow commands.   AR 23, 406.

Plaintiff asserts that the ALJ lacked substantial evidence to justify rejection of Dr. Michiel's opinion in part because the ALJ relied "on portions of the medical records plucked from records that predate Dr. Michiel's examination of the Plaintiff."   Doc. 17 at 12.   Contrary to Plaintiff's assertion, the ALJ considered medical records that not only predated Dr. Michiel's examination, but also post-dated that examination.   For example, the ALJ acknowledged Plaintiff's medical records from November 2012, which post-dated the consultative examination.   AR 463.   In those records, Plaintiff complained that she had been feeling more depressed the past month, crying often, waking late at night or early morning, and having suicidal thoughts.   However, the ALJ discounted these complaints because Plaintiff had run out of her prescribed medication the month before.   AR 25, 463.   The ALJ also cited treatment notes from January 2013, which post-dated the consultative examination.   In those notes, the treatment provider identified only "mild stress and mild depression."   AR 23, 472.

Significantly, Plaintiff does not point to any medical records following Dr. Michiel's examination demonstrating that Plaintiff was unable to maintain the attention and concentration necessary to carry out simple job instructions or that Plaintiff had any significant mental impairment. Although Plaintiff was noted to have severe stress and depression in two isolated treatment notes from

1  November 2012 and February 2013, the remainder of her treatment notes from January, June, July and

2  October 2013 consistently reported that Plaintiff only had "mild stress and mild depression."  AR 468-

3  71, 472-75, 704-07, 709-12, 716-20, 747-50.  There is no indication in any of Plaintiff's treatment

4  records that she suffered from significant deficits in attention or concentration.

5          Further, the ALJ credited the opinion of the state agency psychological consultant, B. Moura,

6  Psy.D.  On August 26, 2012, Dr. Moura reviewed Plaintiff's file, which included Dr. Michiel's

7  opinion and other relevant evidence.  Dr. Moura opined that Plaintiff was limited to understanding and

8  remembering simple 1-2 step tasks and carrying out simple 1-2 step tasks throughout a regular 40 hour

9  workweek with customary breaks.  AR 78.  Dr. Moura opined that Dr. Michiel's marked limitation in

10 concentration, persistence and pace for simple tasks was overly restrictive and not given weight.  AR

11 75. Dr. Moura reasoned that Dr. Michiel's opinion relied heavily on Plaintiff's subjective report of

12 limitations and symptoms and was without substantial support from other evidence of record.  AR 79.

13 Dr. Moura further opined that the Dr. Michiel's opinion was an overestimate of the severity of

14 Plaintiff's restrictions/limitations and was based only on a snapshot of her functioning.  AR 79.

15         "[W]hen it is an *examining* physician's opinion that the ALJ has rejected in reliance on the

16 testimony of a nonexamining advisor, reports of the nonexamining advisor need not be discounted and

17 may serve as substantial evidence when they are supported by other evidence in the record and are

18 consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (emphasis in original);

19 *Tonapeytan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (A non-examining physician's opinion

20 may constitute substantial evidence when it is consistent with other independent evidence in the

21 record).  Moreover, the ALJ has the responsibility for resolving conflicts in the record, and a court will

22 not disturb an ALJ's findings if they are supported. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir.

23 1985).

24         Here, the ALJ relied on Dr. Moura's opinion that Dr. Michiel's marked limitation in

25 concentration, persistence and pace for simple tasks was overly restrictive and was without substantial

26 support in the record.  AR 24.  As discussed above, Dr. Michiel's opinion was not supported by the

27 record, and instead the record as a whole supports Dr. Moura's view that Plaintiff had lesser

28

1    restrictions resulting from her mental impairment.  Therefore, the ALJ did not err in relying on Dr.

2    Moura's opinion that Dr. Michiel's limitation was overly restrictive and unsupported.

3          Overall, the ALJ articulated specific and legitimate reasons for rejecting Dr. Michiel's opinion

4    that Plaintiff was unable to maintain attention and concentration to carry out simple job instructions.

5    The ALJ was entitled to resolve the conflict between Dr. Michiel's opinion and that of the state agency

6    physician in favor of the conclusion supported by the objective evidence. Accordingly, the Court will

7    not reverse or remand the ALJ's decision for failure to properly weigh Dr. Michiel's opinion.

8    **II.     The ALJ Did Not Commit Reversible Error in Finding Plaintiff Capable of**

9    **Performing Her Past Relevant Work as Generally Performed**

10          Plaintiff argues that the ALJ erroneously relied on the VE's testimony which deviated from the

11    Dictionary of Occupational Titles ("DOT") to conclude that Plaintiff could perform her past relevant

12    work at step four of the sequential evaluation.

13          At step four, the claimant bears the burden of showing that she does not have the RFC to

14    engage in "past relevant work."  20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(e); *Tackett v. Apfel*,

15    180 F.3d 1094, 1098 (9th Cir. 1999). Work experience is considered relevant if done within the last

16    fifteen years, lasted long enough for claimant to learn it, and involved substantial gainful activity. 20

17    C.F.R. § 404.1565(a); 20 C.F.R. § 416.965(a); *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir.

18    2001). If a claimant can perform her past relevant work, then she is not disabled. 20 C.F.R. §

19    404.1520(e); 20 C.F.R. § 416.920(e); *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001).

20          Here, the ALJ found that Plaintiff had the RFC to perform light work with additional

21    restrictions and was limited to "understanding, remembering, and carrying out simple 1-2 step tasks

22    throughout a regular 40 hour workweek and 8-hour workday, with customary breaks."  AR 21.  The

23    VE testified that a hypothetical individual with these limitations could perform Plaintiff's past relevant

24    work as a mail clerk and a deli cutter as described in the DOT.  AR 55-56.  Based on the VE's

25    testimony, the ALJ concluded that Plaintiff was capable of performing her past relevant work as mail

26    clerk and deli cutter as generally performed in the national economy.  AR 26-27.  According to the

27    DOT, these jobs require a GED Reasoning Level of 3 and 2 respectively.  Mail Clerk, DOT No.

28    209.667-026, 1991 WL 671813; Deli Cutter-Slicer, DOT No. 316.684-014, 1991 WL 672744.

1    Plaintiff now contends that the ALJ erred because a reasoning level of two or three is

2  incompatible with a restriction to simple 1-2 step tasks, and the ALJ failed to resolve the conflict.  In

3  contrast, the Commissioner attempts to distinguish the facts of this case and alternatively argue that

4  any error was harmless.

5    The Ninth Circuit has addressed the conflict at issue here between level 2 or 3 reasoning and a

6  limitation to simple one to two step tasks.  In *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015), the

7  Ninth Circuit found "an apparent conflict between the residual functional capacity to perform simple,

8  repetitive tasks, and the demands of Level 3 Reasoning."  *Id.* at 847.  The Ninth Circuit determined

9  that "because the ALJ failed to recognize an inconsistency, she did not ask the expert to explain why a

10  person with Zavalin's limitation could nevertheless meet the demands of Level 3 Reasoning.  We

11  conclude that the ALJ erred in failing to reconcile the apparent conflict."  *Id.*  Therefore, the *Zavalin*

12  court remanded the case for further proceedings.

13    Likewise, in *Rounds v. Commissioner Social Sec. Admin.*, 807 F.3d 996 (9th Cir. 2015), the

14  Ninth Ciruit found "an apparent conflict between Rounds' RFC, which limits her to performing one-

15  and two-step tasks, and the demands of Level Two reasoning, which requires a person to '[a]pply

16  commonsense understanding to carry out detailed but uninvolved written or oral instructions."  *Id.* at

17  1003; *compare Flash v. Colvin*, No. 1:14-cv-01885-BAM, 2016 WL 1086886, at *5 (E.D. Cal. Mar.

18  21, 2016) (finding limitation to simple, routine and repetitive work consistent with Level 2

19  Reasoning).  As with *Zavalin*, the Ninth Circuit found that "[b]ecause the ALJ did not recognize the

20  apparent conflict between Rounds' RFC and the demands of Level Two reasoning, the VE did not

21  address whether the conflict could be resolved."  *Id*. at 1004.  The Ninth Circuit remanded the matter

22  with instructions that the ALJ "determine whether there is a reasonable explanation to justify relying

23  on the VE's testimony."  *Id.*

24    In this case, the ALJ asked the VE to certify that her testimony would be consistent with the

25  DOT and, if it was not, to explain the reason.  AR 52.   Although the VE identified discrepancies

26  between the DOT and her testimony regarding Plaintiff's past relevant work as a mail clerk and deli

27  cutter-slicer, those discrepancies related to the performance of light versus medium work, not

28  reasoning levels.  AR 52, 53-54.  There is no indication that the ALJ recognized an apparent conflict

1      between Plaintiff's RFC and the demands of reasoning levels 2 or 3.  As a result, the VE did not

2      address whether the conflict could be resolved.  Therefore, the Court concludes that the ALJ erred.

3                 Even though the ALJ erred by failing to reconcile the apparent conflict between the VE's

4      testimony and the DOT, the Court is not precluded from considering whether Plaintiff's abilities

5      demonstrate that she is capable of working as a mail clerk or deli cutter-slicer. *See Zavalin*, 778 F.3d

6      at 847-48; *Musser v. Colvin*, No. 1:14-CV-00684-SKO, 2015 WL 4460677, at *7 (E.D. Cal. Jul. 21,

7      2015) ("Even if the ALJ errs in failing to reconcile an apparent conflict between the VE's testimony

8      and the DOT, the Court must consider whether the plaintiff's abilities, such as his educational

9      background, demonstrate that he is indeed capable of working, rendering the ALJ's error harmless").

10                In contending that that ALJ's error was harmless, the Commissioner argues that Plaintiff's

11     educational background, past work experience and cognitive abilities demonstrate that she is capable

12     of performing her past relevant work as a mail clerk or deli cutter.  The Court agrees.  According to

13     the record, Plaintiff has a GED.  This level of education indicates that Plaintiff has "abilities in

14     reasoning, arithmetic and language skills acquired through formal schooling at a 12th grade level or

15     above" and is generally considered able to do "semi-skilled through skilled work."   20 C.F.R. §

16     404.1564(b)(4); 20 C.F.R. § 416.964(b)(4).

17                The record also reflects that Plaintiff has performed the same work as mail clerk and deli cutter

18     in the past.  With respect to this past work, the ALJ determined that Plaintiff's time spent on the job

19     was adequate for Specific Vocational Preparation ("SVP") 2 and 3 work.  AR 27.  Both the mail clerk

20     and deli cutter-slicer jobs require only an SVP of 2.  Mail Clerk, DOT No. 209.667-026, 1991 WL

21     671813; Deli Cutter-Slicer, DOT No. 316.684-014, 1991 WL 672744.   Further, Plaintiff has

22     performed semi-skilled work in the past.  AR 52-54.  For example, Plaintiff's past relevant work as a

23     nurse assistant, a general clerk and a home attendant each required a reasoning level of 3. AR 52-54;

24     Nurse Assistant, DOT No. 355.674-014, 1991 WL 672944; Clerk, General, DOT No. 209.562-010,

25     1991 WL 671792; Home Attendant, DOT No. 354.377-014, 1991 WL 672933.

26                 As a final matter, there is no support in Plaintiff's medical records demonstrating that she has

27     diminished reasoning ability that would preclude her from performing her past relevant work.

28

1  As noted, Plaintiff's mental status examinations were generally unremarkable.  Indeed, even Dr.

2  Michiel found that Plaintiff's recent memory was intact, her remote memory did not show any

3  impairment as demonstrated "by her ability to organize events into their proper sequence while giving

4  her history of present illness," she was able to do simple math calculations, her insight and judgment

5  were intact, her abstract thinking was concrete and her fund of knowledge average.  AR 452-53.  Dr.

6  Michiel also found that Plaintiff had no restrictions on her activities of daily living and was able to

7  handle her own funds.  AR 453-54.  In addition to these findings, Plaintiff's most recent treatment

8  records from 2013 identified only mild stress and mild depression, and at least one examiner opined in

9  2012 that Plaintiff "follows commands appropriately."   AR 32.

10       At a minimum, Plaintiff's level of education, work experience and cognitive abilities

11  demonstrate that she is capable of her past relevant work as a deli cutter-slicer, which requires

12  application of a commonsense understanding to carry out detailed but uninvolved written or oral

13  instructions at reasoning level 2.   Deli-Cutter-Slicer, DOT No. 316.684-014, 1991 WL 672744.

14  Therefore, the Court finds that any error in failing to reconcile the VE's testimony with the DOT at

15  step four is harmless.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error

16  harmless if it is inconsequential to the ultimate nondisability determination).

17                                        **CONCLUSION**

18       Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

19  evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court

20  DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

21  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill,

22  Acting Commissioner of Social Security, and against Plaintiff Stephanie Renee Sepulveda.

23

24  IT IS SO ORDERED.

25       Dated:   **February 23, 2017**          /s/ *Barbara A. McAuliffe*

26                                        UNITED STATES MAGISTRATE JUDGE

27

28

14